UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYMPHONY RISK SOLUTIONS INSURANCE SERVICES, INC,<br><br>   Plaintiff,<br><br>   v.<br><br>PAUL PERLITE, et al.,<br><br>   Defendants. | Case No. 24-cv-06437-WHO<br><br>**ORDER ON THE MOTION TO DISMISS**<br><br>Re: Dkt. No. 17 |

Plaintiff Symphony Risk Solutions Insurance Services, Inc. ("Symphony Risk" or "Symphony") is an insurance and consulting company. Symphony Risk filed this lawsuit against individual defendants Paul Perlite ("Perlite"), Jeff Holman ("Holman") and John Nicholas Dieter ("Dieter") (together, "the individual defendants") and their current employers, Pinnacle Brokers Insurance Solutions, Pinnacle Brokers Insurance Solutions LLC, and/or Foundation Risk Partners, Corp. (together, "the Pinnacle defendants" or "Pinnacle"),[1] alleging breach of contract and fiduciary duties along with other state law violations and a violation of the Defense of Trade Secrets Act. The individual and Pinnacle defendants moved to dismiss certain causes of action because they are preempted by California's Uniform Trade Secrets Act ("CUTSA").[2] Defendants

---

[1] Defendants note in their motion that Symphony has inaccurately named the Pinnacle entity in its case. *See* Motion to Dismiss at 1, n.1. In opposition, Symphony continued to name three separate Pinnacle entities. *See* Opposition at 1, n.1. Construing the facts favorably to the nonmoving party as I must in a motion to dismiss, I refer to all three Pinnacle entities throughout this order. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.").

[2] Symphony additionally asserted an unjust enrichment claim against Pinnacle. *See* Compl. ¶¶ 224–28. Symphony conceded that dismissal was appropriate (both in its opposition and during the hearing on this motion). Oppo. 2, n.2 ("Symphony does not oppose Defendants' motion to dismiss its unjust enrichment claim."). Accordingly, defendants' Motion to Dismiss is granted without leave to amend for Symphony Risk's unjust enrichment claim.

are correct. For the following reasons, the motion to dismiss is GRANTED.

**BACKGROUND**

Symphony Risk is a Delaware incorporated company that provides businesses throughout the United States with insurance and consulting advice. Complaint ("Compl.") [Dkt. No. 1-2] ¶ 23. It filed a Complaint against three of its former employees (the individual defendants), the Pinnacle defendants, and 20 Doe defendants. Compl. As relevant, Symphony Risk alleges the following.

In 2022, Symphony Risk merged with another insurance firm, Maroevich, O'Shea & Coghlan Insurance Services, Inc. ("MOC"). Compl. ¶ 7. Prior to the merger, MOC hired Dieter, Perlite, and Holman as Vice President of Group Health Insurance & Employee Benefits, Vice President, and Account Executive respectively. Compl. ¶¶ 31, 35, 41. Each employee continued on with Symphony Risk following the merger, engaging in client-facing work on behalf of the company. As a condition of their employment, the individual defendants each signed Employment Agreements that restricted their ability to use and disseminate MOC's (and subsequently, Symphony Risk's) confidential and proprietary information, including information concerning:

> MOC's clients' identity, contact information, specific coverages, premium and commission rates, expiration dates, risk specifications and analysis, and claims loss histories . . . and . . . MOC's operations manuals, pricing and commission policies, business strategies and techniques, personnel identity, compensation, handbook, and related files, market surveys and reports, sales plans, strategies and reports.

Compl. ¶ 33. The employees further agreed to work exclusively for MOC/Symphony Risk. ¶¶ 32, 36, 42, 44.

After the merger, the employees additionally signed an Employee Proprietary Information and Inventions Assignment Agreement ("PIIAA"), which required that the individual defendants "not engage in other employment or in any conduct that could either be in direct conflict with the Company's interests or that could cause a material and substantial disruption to the Company" and that they use company-provided technology and devices only in authorized manners. Compl. ¶ 47. The individual defendants were not to disclose any of Symphony Risk's proprietary information to

2

anyone outside the company, and they were to return any company-provided materials at the conclusion of any employment. Compl. ¶¶ 48–52. The PIIAA noted that the contents of the agreement extended beyond any employment term with Symphony Risk. Compl. ¶ 51.

Perlite, Holman, and Dieter also each executed a Handbook Acknowledgement, which included a Confidential Information and Trade Secrets Policy—further prohibiting the individual defendants from unauthorized use of "any proprietary or confidential information." Compl. ¶¶ 56–60. This final policy prohibited employees from removing data from company-provided devices and from "transmit[ting] any confidential information, proprietary information or trade secrets of Symphony or any Symphony client out of the Symphony network . . . to any other location." Compl. ¶¶ 61–63.

Symphony Risk alleges that Dieter notified it of his immediate resignation on September 12, 2022. Compl. ¶ 64. During his preparations to leave the company, Symphony Risk alleges, Dieter used confidential and proprietary information to contact a Symphony client and "solicit [the client] to switch from Symphony to Pinnacle and Dieter as its insurance benefits broker." Compl. ¶ 67. Dieter again used Symphony Risk's confidential and proprietary information to craft a broker of record letter that he subsequently sent to the client, and to "dozens" of others, after leaving Symphony Risk. Compl. ¶¶ 67–75.

Regarding Perlite and Holman, Symphony alleges that following encouragement from Dieter, they resigned from Symphony Risk in similar fashion on June 17, 2024. Compl. ¶¶ 3, 82. According to Symphony, Holman and Perlite (1) "deleted [a] significant amount of content on their Symphony laptops;" (2) solicited seventeen of Symphony's clients to transfer to Pinnacle's services using Symphony Risk's confidential and proprietary information; and (3) communicated with Pinnacle about Symphony's clientele—all in violation of the employment agreements and contracts they had signed during the course of their employment at Symphony Risk. Compl. ¶¶ 85, 90–103, 105–109.

Finally, Symphony Risk alleges that the Pinnacle defendants solicited Dieter to leave Symphony and to use Symphony's confidential and proprietary information in so doing. Compl. ¶¶ 114–17. Following Dieter's exit, Pinnacle and Dieter allegedly "conspired with, aided and abetted, and/or otherwise supported and encouraged Perlite and Holman regarding their exit from Symphony, their joining Pinnacle, and their access to, misappropriation of, and (mis)use of Symphony's confidential and proprietary information to solicit Symphony clients to move to Pinnacle." Compl. ¶ 119. Symphony alleges that despite Pinnacle's awareness of the individual defendants' "contractual obligations and common law duties," Pinnacle chose to "unlawfully and tortiously interfere[] with Symphony's existing business relationships with its clients." Compl. ¶¶ 123, 125.

The complaint asserts eleven causes of action against the defendants: (1) breach of contract against Dieter, Compl. ¶¶132–39; (2) breach of contract against Perlite, *id.* ¶¶ 140–48; (3) breach of contract against Holman, *id.* ¶¶149–157; (4) intentional interference with existing economic relations against all defendants, *id.* ¶¶158–168; (5) intentional interference with prospective economic relations against all defendants, *id.* ¶¶169–177; (6) breach of fiduciary duty against the individual defendants, *id.* ¶¶178–185; (7) aiding and abetting breach of fiduciary duty against the Pinnacle defendants, *id.* ¶¶ 186–194; (8) violation of California state law prohibiting unfair competition, Cal. Bus. & Prof. Code § 17200, Compl. ¶¶ 195–203; (9) violation of the California Uniform Trade Secrets Act, Compl. ¶¶ 204–214; (10) violation of the Defense of Trade Secrets Act 18 U.S.C. § 1836, Compl. ¶¶ 215–223; and (11) unjust enrichment, Compl. ¶¶ 224–28. Symphony seeks injunctive and monetary relief. *Id.* 35–36.

Symphony Risk filed this lawsuit in September 2024. [Dkt. No. 1]. The defendants moved to dismiss the complaint, alleging that Causes of Action 4–8 are, at minimum, preempted by CUTSA. Motion to Dismiss ("MTD") [Dkt. No. 17] 1. Following defendants' opposition, ("Oppo.") [Dkt. No. 18], and Symphony Risk's Reply, ("Repl.") [Dkt. No. 21], I held a hearing on

the motion on December 4, 2024.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

**I.      CUTSA Preemption**

Pinnacle moves to dismiss five of Symphony Risks claims because each is based on "the same nucleus of facts as Plaintiff's CUTSA claim," and is therefore preempted by CUTSA.  MTD 5.  "CUTSA provides the exclusive civil remedy for conduct falling within its terms, so as to supersede other civil remedies 'based upon misappropriation of a trade secret.'"  *Silvaco Data Systems v. Intel Corp.*, 185 Cal. App. 4th 210, 236 (2010) (citing CUTSA at Cal. Civ. Code § 3426.7(b)).  Further, "state law claims based on the same operative facts as a trade secret claim are preempted by [CUTSA]."  *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1033–34 (N.D. Cal. 2005) (Seeborg, J.).  As long as the confidential and proprietary information at issue is "not . . . generally known to the public," the claim will be preempted by CUTSA—"notwithstanding the fact that the information fails to meet the definition of a trade secret."  Cal. Civ. Code § 3426.1(d)(1); *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012).

To survive CUTSA preemption, a claim must "retain sufficient independent facts" once any facts related to trade secrets are removed.  *Gabriel Tech. Corp. v. Qualcomm Inc.*, No. 08-CV-1992-MM, 2009 WL 3326631 (S.D. Cal. Sept. 3, 2009).  With that in mind, I analyze each of the claims that Pinnacle moves to dismiss.

**A.   Intentional Interference with Existing and Prospective Economic Relations Claims**

Symphony alleges two claims of intentional interference with economic relations, with the Fourth Claim concerning existing economic relations and the Fifth Claim concerning prospective economic relations.  Compl. ¶¶158–177.  The claims are substantially similar, and in pertinent part allege:

> Defendants, individually and in concert or conspiracy with one another, knowingly and

6

     intentionally disrupted and have continued to attempt[3] to disrupt Symphony's economic relationships with one or more individuals or entities in the manner as alleged above, including by not limited to through the following conduct:
     a. Defendants' misappropriation and misuse of Symphony's Confidential & Proprietary Information for their benefit and against Symphony by soliciting individuals or entities with whom Symphony had an economic relationship to stop working with Symphony and work with Pinnacle instead;
     b. Holman's false statements to individuals or entities with whom Symphony had an economic relationship, as described herein; and
     c. the Individual Defendants' breach of their duties owed to Symphony to act loyally and in Symphony's best interests in their communications with and solicitation of the Solicited Clients and other clients.

Compl. ¶¶ 161, 172. The complaint further alleges that "[a]s a direct and proximate result of Defendants' conduct as alleged above, Defendants are continuing to attempt to negatively disrupt Symphonies [sic] relationships with one or more individuals or entities, including but not limited to soliciting Symphony's remaining clients through the misuse of its [sic] Symphony's Confidential & Proprietary Information." Compl. ¶¶ 163, 173.

     For reasons clear on its face, Symphony's allegation concerning Pinnacle's "misappropriation and misuse of Symphony's Confidential & Proprietary Information" is preempted by CUTSA. Symphony Risk consistently and clearly throughout its complaint, including within its claim for relief under CUTSA, Compl. ¶¶204–214, presents the confidential and proprietary information at issue as "not . . . generally known to the public." Cal. Civ. Code § 3426.1(d)(1). Likewise, because Holman's alleged false statements were to "individuals or entities with whom Symphony had an economic relationship," i.e., individuals or entities whose identities were within Symphony Risk's express scope of confidential and proprietary information, that portion of the claim, as currently pleaded, is likewise preempted by CUTSA. Finally, as pleaded, Symphony's assertion that the individual defendants' breach of their duty of loyalty amounted to intentional interference with existing and future economic relations is also subject to

---

[3] Claim Five substitutes the language " . . . knowingly and intentionally have continued to attempt to disrupt" here, but is otherwise identical. Compl. ¶ 172.

7

CUTSA preemption.

In opposition, Symphony argues that when a claim shares a different factual nucleus from a trade secret claim, that claim can independently survive. For example, Symphony cites to *JEB Group, Inc. v. San Jose III* for the proposition that "[v]iewing the allegations in a light most favorable to [Plaintiff], it is reasonable to infer that Defendants interfered with [Plaintiff's] business relationships without relying on trade secrets or other confidential information." No. 19-CV-04230-CJC, 2020 WL 2790012 *4 (C.D. Cal Mar. 31, 2020). And Symphony refers to *Arthur J. Gallagher & Co. v. Tarantino,* where the court held that an intentional interference claim brought against defendants was not preempted by CUTSA "to the extent that [Plaintiff] alleges that Defendants breached their fiduciary duties while working for [Plaintiff]." No. 20-CV-05505-EMC, 2022 WL 4092673 *12 (N.D. Cal. July 27, 2022).

Symphony's assertions that the individual defendants interfered with its business relationships *solely* rely on "trade secrets or other confidential information." *JEB Group, Inc.*, 2020 WL 2790012 at *4. Regarding Symphony's reliance on *Gallagher*, the Hon. Edward M. Chen concluded in that case that there was no CUTSA preemption because the plaintiff alleged claims that were "separate and apart from the trade secret misappropriation claims." *Gallagher*, 2022 WL 4092673 *12. That is not true of this case.

In Symphony Risk's factual allegations, it contends that "Dieter breached his agreements by unlawfully accessing and using Symphony's Confidential & Proprietary Information leading up to and following his departure to Pinnacle." Compl. 14. (cleaned up). It alleges that Perlite and Holman "plot[ted] their departure from Symphony, while improperly accessing and misappropriating Symphony's Confidential & Proprietary Information and soliciting Symphony's clients for their benefit." Compl. 16. (cleaned up). Although it contends that its allegations concerning breach of duty of loyalty are not "limited to Symphony's trade secret allegations," at no point in its complaint has it sufficiently alleged facts to conclude otherwise. Oppo. 4. Both

8

intentional interference claims, as currently pleaded, are "based on the same operative facts as" Symphony's trade secret claim and "are preempted by [CUTSA]." *Digital Envoy*, 370 F. Supp. 2d at 1033–34. The claims are dismissed with leave to amend.

### B. Breach of Fiduciary Duty and Loyalty Claim

Symphony Risk's breach of fiduciary duty and common-law duty of loyalty claim meets a similar fate. In its Sixth Claim, Symphony alleges in relevant part that:

> Holman, Perlite and Dieter knowingly and intentionally breached their fiduciary and common-law duties owed to Symphony in the manner as alleged herein, including, but not limited to, by deleting and/or altering as well as misusing Symphony's Confidential & Proprietary Information during and after their employment and/or soliciting Symphony clients while still employed by Symphony.

Compl. ¶ 181. Symphony does not, within its claim for relief or elsewhere throughout its complaint, allege any facts that illuminate in what other way the individual defendants breached their fiduciary and common-law duties besides those related to misuse of information "not . . . generally known to the public." Cal. Civ. Code § 3426.1(d)(1). It does not expand upon what it means when it alleges that the individual defendant's actions are "not limited to" deleting, altering, or misusing that information. Compl. ¶ 181.

Symphony Risk contends that its claims "do not depend on Symphony's trade secret allegations and should not be dismissed." Oppo. 8. It is correct in citing *Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.* for the proposition that "a claim alleging a violation of a duty of loyalty is not displaced by CUTSA where the duty of loyalty would be violated by undertaking competitive acts, regardless of whether any proprietary information was implicated." 19-CV-05611-PJH, 2020 WL 513287 *14 (N.D. Cal. Jan. 31, 2020). But "[w]here the allegation is that [a defendant] breached his duty of loyalty *by* disclosing trade secrets, the claim for breach of fiduciary duty is based on the same operative facts and is therefore preempted by CUTSA." *Id.*

As I have already explained, Symphony only alleges that the individual defendants have breached their duty of loyalty through their misappropriation of trade secrets. "Courts have held

9

that CUTSA does not supersede claims based on allegations and facts not involving misappropriation of trade secrets. However, if a plaintiff does not clearly delineate which facts would support a claim that would not be superseded by CUTSA, a court may dismiss that claim with leave to amend." *Nelson Bros. Prof. Real Estate LLC v. Jaussi*, No. SA-CV-17-0158-DOC, 2017 WL 8220703 *7 (C.D. Cal Mar. 23, 2017); *see also Gallagher*, 2022 WL 4092673 *12. I choose to do so here.

### C. Aiding and Abetting Claim

Along with its claim asserting a breach of fiduciary duty against the individual defendants, Symphony also raises a claim against Pinnacle for aiding and abetting that breach. Symphony's complaint includes only two relevant allegations. First, it alleges that "Pinnacle knew that Holman, Perlite, and Dieter were breaching their fiduciary and common law duties to Symphony in their unlawful misappropriation of Symphony's Confidential & Proprietary Information and solicitation of its clients." Compl. ¶ 190. Second, it asserts that "Pinnacle encouraged, supported, assisted, and/or otherwise aided Holman, Perlite, and Dieter in breaching their fiduciary and common law duties to Symphony by their unlawful misappropriation of Symphony's Confidential & Proprietary Information and/or solicitation of its clients." Compl. ¶ 191. Both assertions incorporate Symphony's trade secrets as a part of the allegation. Neither "retain[s] sufficient independent facts" once any facts related to trade secrets are removed. *Gabriel Tech. Corp.*, 2009 WL 3326631. Symphony's Seventh Claim is therefore preempted by CUTSA.

Pinnacle also contends that Symphony Risk "fails to allege any well-pleaded facts" to support this claim, requiring that it be dismissed in any event. MTD 9–10. Symphony appears to overlook this argument. *See* Oppo. 9 ("Defendants do not argue that . . . the allegations Symphony makes would fail to state a claim in the absence of CUTSA preemption. . . . [T]he only argument Defendants put forward is that Symphony's aiding and abetting claim against Pinnacle should be dismissed 'because the breach of the duty of loyalty claim [against the Individual

10

Defendants] is preempted.'"). Although I have concluded that this claim is preempted under CUTSA, I note that in any amended complaint, Symphony must allege well-pleaded facts to avoid a future dismissal with prejudice.

### D. California Business and Professions Code § 17200 Claim

Symphony Risk's final claim at issue is its Eighth Claim against the defendants, a violation of California Business and Profession's Code section 17200. In that claim, Symphony alleges that

> Defendants have engaged in an unlawful, unfair, or fraudulent business practice(s) or act(s) in violation of California Business and Professions Code Section 172200, *et seq*, including but not limited to Pinnacle and the Individual Defendants' conduct as described herein; the Individual Defendants' misappropriation and misuse of Symphony's Confidential & Proprietary Information, false statements to Symphony clients, and solicitation of Symphony's clients in breach of their duties; and Pinnacle's conspiracy, aiding and abetting, encouragement, and/or knowledge of said acts by the Individual Defendants being taken for its/their benefit.
>
> The Defendants unlawfully jumped-the-gun and took anti-competitive measures to gain an unfair advantage to solicit Symphony's clients by using its Confidential & Proprietary Information.
>
> The Defendants manipulated the market for the services Symphony's clients require through their use of Symphony's Confidential & Proprietary Information instead of competing for those clients' business on a level playing field.

Compl. ¶¶ 196–8.

Symphony again points to caselaw that is unhelpful to its assertion that its Business and Professions Code violation claim is independent of its factual allegations asserting misuse of trade secret. *See Strategic Partners v. Figs, Inc.*, No. 2:19-CV-02286-JWH, 2021 WL 4813645 (C.D. Cal. Aug. 10, 2021) (dismissing only one of two Section 17200 claims because a Section 17200 claim that "does not implicate the Confidential Information or CUTSA preemption principles" is not preempted by CUTSA); *see also Gallagher*, 2022 WL 4092673 *12. Unlike in *Strategic Partners*, here, Symphony Risk's Section 17200 claim implicates confidential information in a similar fashion as the intentional interference and duty of loyalty claims and is preempted by

CUTSA. I likewise dismiss this claim, with leave to amend.[4]

## CONCLUSION

For those reasons, the motion to dismiss is GRANTED with leave to amend. Any amended complaint should be filed within 30 days of this Order.

**IT IS SO ORDERED.**

Dated: December 13, 2024

William H. Orrick
United States District Judge

---

[4] Because caselaw is clear that claims may be pleaded alleging intentional interference with economic relations, breach of fiduciary duty/duty of loyalty, aiding and abetting, and violations of California Business Code Section 17200 in a way that are not preempted by CUTSA, I disagree with defendants' contention that any amendment would be futile. Repl. 9.

12